**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**B.R., a child with a disability,**
**individually and by his parent and**
**next friend, R.R.,**

                    **Plaintiffs,**                      **07-CV-1195**

        **v.**

**LAKE PLACID CENTRAL SCHOOL DISTRICT,**

                    **Defendant.**
_____

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Office of Andrew K. Cuddy        JASON H. STERNE, ESQ.
5888 Main Street
Williamsville, NY 14221

**FOR THE DEFENDANT:**
Stafford, Owens Law Firm        THOMAS W. PLIMPTON, ESQ.
One Cumberland Avenue
Plattsburgh, NY 12901

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

Following the execution of an agreement with the Lake Placid Central

School District ("the School District"), B.R., through his parent R.R.

(collectively referred as the "Plaintiffs"), filed this motion for summary

judgment seeking attorneys fees pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.[1]  The School

District responded with its own motion for summary judgment.  After

reviewing the parties' motions, briefs in support thereof, responses, and the

record on the matter, the court grants the plaintiffs' motion and denies the

School District's motion.

## **BACKGROUND**

The following relevant facts are undisputed.  On July 24, 2006, the

plaintiffs initiated an administrative proceeding requesting a Demand for a

Due Process Hearing (the "hearing") because they were dissatisfied with

the Individualized Education Plan ("IEP") B.R. was receiving at the School

District.  (Ex. A to Cuddy's Affirmation)  More than ten days prior to the

commencement of the hearing, the School District submitted an Offer of

Settlement.  (Ex. B to Cuddy's Affirmation, Offer of Settlement)  However,

the plaintiffs did not respond to such offer.  (School District's Memorandum

of Law at p. 1.)  The plaintiffs proceeded to the hearing and the parties, on

September 6, 2006, settled the matter signing a "Consent Decree."  (Ex. B

---

[1]B.R. is a child with a disability within the meaning of the IDEA.

to Cuddy's Affirmation, Consent Decree)

On November 9, 2008, the plaintiffs filed the instant action seeking attorneys fees.  The School District responded with its own motion for summary judgment arguing, among other things, that plaintiffs are not entitled to recover attorneys fees due to their failure to comply with the Local Rule 7.1 and for not being the prevailing party under the IDEA.

## DISCUSSION

To defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact.  *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).  The nonmoving party must provide more than a scintilla of evidence.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986).  In other words, the party must present sufficient evidence to permit a reasonable juror to find in its favor, but the nonmoving party cannot simply rely on unsupported allegations in attempting to survive a summary judgment motion.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).[2]

---

[2]The court notes that within the Second Circuit, many sister district courts recognize that "IDEA actions in federal court generally are resolved by examination of the administrative record in a summary judgment procedural posture."  *J.R. v. Board of Educ. of the City of Rye,* 345 F.Supp.2d 386, 394 (S.D.N.Y. 2004); *see also A.S. ex rel. Mr. and Mrs. S v. Norwalk Bd. of Educ.,* 183 F.Supp.2d 534, 539 (D.Conn. 2002); and *Wall v. Mattituck-Cutchogue Sch. Dist.,* 945 F.Supp. 501, 508 (E.D.N.Y. 1996).

3

"The IDEA's central mandate is to provide disabled students with a free appropriate public education in the least restrictive environment suitable for their needs." *Cave v. East Meadow Union Free School Dist.,* 514 F.3d 240, 245 (2d Cir. 2008) (quotations and citation omitted). "Under the educational scheme of the IDEA, parents of students with disabling conditions are guaranteed both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Id.* (parenthesis omitted). "Parents are specifically entitled to request a due process hearing in order to present complaints as to any matter relating to the identification, evaluation, or educational placement of the child, or to the provision of a free appropriate public education." *Id.* (citations omitted). "New York has opted for a two-tier administrative system for review of [Individual Education Plans]." *Id.* "First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision." *Id.* That decision can then be appealed to a state review officer of the New York Education Department. *Id.*

The "IDEA expressly provides that any party aggrieved by the final

4

state decision shall have the right to bring a civil action challenging the decision in any State court of competent jurisdiction or in a district court of the United States." *Bay Shore Union Free Sch. Dist. v. Kain,* 485 F.3d 730, 732 (2d Cir. 2007) (quotations and citation omitted).  A district court may in its discretion award attorneys fees to a prevailing party in an IDEA proceeding or action.  20 U.S.C. § 1415(i)(3)(B)(i)(I); see also *Mr. B. v. East Granby Bd. of Educ.,* 201 F.App'x. 834, *2 (2d Cir. 2006).  Under the IDEA, attorneys fees may not be awarded if the court determines that the relief obtained by the parents is not more favorable to the parents than the offer of settlement.  20 U.S.C. § 1415(i)(3)(D)(III).  The IDEA also indicates attorneys fees should be reduced if the court finds that the parent has unreasonably protracted the final resolution of the controversy, the hourly rate unreasonably exceeds the applicable prevailing rate, or time expended is excessive.  20 U.S.C. § 1415(i)(3)(F)(i)-(iii).

The parties' disputes are: (1) whether the plaintiffs are prevailing parties within the meaning of the IDEA for the purpose of recovering attorneys' fees; and (2) the amount of attorneys fees, if any.[3]

---

[3]The court notes that the School District asked the court to dismiss the plaintiffs' motion under the IDEA because they failed to comply with Local Rule 7.1(a)(3), which requires that a statement of material facts accompanies a typical summary judgment motion.  The court, however, will deny such request because the statement of material facts will not aid the court

**Prevailing Party**

The Second Circuit has recognized that an individual can be the prevailing party by virtue of having obtained IDEA relief through a settlement or consent decree. *See A.R. v. N.Y.C. Dep't of Educ.,* 407 F.3d 65, 78 (2d Cir. 2005). In *A.R.,* the Second Circuit stated dispositive administrative orders incorporating the terms of settlements affords a party prevailing status. *Id.* at 77. The Court noted, "[w]e think that [administrative consent decrees] evidence the same combination of administrative imprimatur, change in the legal relationship of the parties, and judicial enforceability that renders the winner on the merits in an [Impartial Hearing Officer ("IHO")] decision . . . . a "prevailing party" under the IDEA []." *Id.*

Here, the parties proceeded to a hearing before an IHO and agreed to, and signed, a Consent Decree which incorporated almost every item plaintiffs requested in their demand for a due process hearing. The IHO signed and ordered the decree. This gave rise to the "combination of administrative imprimatur, a change in the legal relationship of the parties,

_____

in its independent review of the record in deciding whether plaintiffs are the prevailing party and, if so, whether they are entitled to attorneys fees. *See Student X v. New York City Dept. of Educ.,* 2008 WL 4890440, at *11 (E.D.N.Y. 2008) (citing *Lillbask ex rel. Mauclaire v. State of Conn.,* 397 F.3d 77, 83 n. 3 (2d Cir. 2005).

and judicial enforceability" rendering plaintiffs the prevailing party status for

IDEA purposes.  *Id; see also V.G. v. Auburn Enlarged Cent. School Dist.,*

2008 WL 5191703 (N.D.N.Y. 2008)*.*

    **Attorneys Fees**

    With respect to the issue of attorneys fees, the School District's main

contention is that plaintiffs are not entitled to attorneys fees because

plaintiffs obtained relief which is not more favorable than the School

District's offer of settlement.  The court disagrees.

    The Consent Decree gives the parents more input on B.R.'s care

than the Offer of Settlement provides.  For example, Paragraph 1 of the

Offer of Settlement provides for an evaluation by the Traumatic Brain Injury

Center ("TBI").  (Ex. E to Cuddy's Affirmation, Offer of Settlement at ¶ 1)

However, the Consent Decree adds that the parents also have the right to

request an independent evaluation if they disagree with TBI's report or

recommendation.  (Ex. B to Cuddy's Affirmation, Consent Decree at ¶ 12)

Paragraph 2 of the Offer of Settlement provides that the district shall

maintain an expert with knowledge of bi-polar disorder, but the Consent

Decree gives the parents input in the selection of this expert, i.e., by mutual

agreement.  (Ex. E to Cuddy's Affirmation, Offer of Settlement at ¶ 2 and

7

Ex. B to Cuddy's Affirmation, Consent Decree at ¶ 2) Paragraph 3 of the

Offer of Settlement indicates the district will incorporate the results of the

expert's evaluation, but the Consent Decree gives the expert, who the

parents agreed upon, an opportunity to participate more directly in the

implementation of his evaluations.  (Ex. E to Cuddy's Affirmation, Offer of

Settlement at ¶ 3 and Ex. B to Cuddy's Affirmation, Consent Decree at ¶ 2)

The Offer of Settlement provides for a six-hour school day, but the Consent

Decree guarantees B.R. will start and end his school day at the same time

as non-disabled students in school.  (Ex. E to Cuddy's Affirmation, Offer of

Settlement at ¶ 10 and Ex. B to Cuddy's Affirmation, Consent Decree at ¶

7)

The Consent Decree is also more specific than the Offer of

Settlement regarding the benefits for B.R.  For example, paragraph 4 of the

Offer of Settlement provides for an unspecified amount of compensatory

education, but the Consent Decree sets forth the exact number of

compensatory sessions B.R. should receive.  (Ex. E to Cuddy's Affirmation,

Offer of Settlement at ¶ 4 and Ex. B to Cuddy's Affirmation, Consent

Decree at ¶ 11) Paragraph 9 of the Offer of Settlement vaguely states the

School District shall continue supporting B.R.'s social development and

integration, and shall seek opportunities to allow integrated learning, but

the Consent Decree specifically refers to those integration activities stating

"interaction with his peers, including homeroom, lunch and recess."  (Ex. E

to Cuddy's Affirmation, Offer of Settlement at ¶ 9 and Ex. B to Cuddy's

Affirmation, Consent Decree at ¶ 1) "Push-in social skills services shall be

provided to support and address socialization goals during these times."

(Ex. B to Cuddy's Affirmation, Consent Decree at ¶ 1) The Offer of

Settlement provides no information regarding physical restraint of B.R.

(undoubtedly a very important issue for B.R. and his parents), but the

Consent Decree provides detailed instructions with respect to this issue.

(Ex. B to Cuddy's Affirmation, Consent Decree at ¶ 6)

Viewing the Offer of Settlement and the Consent Decree in their

entirety, the court determines plaintiffs obtained substantially more

favorable relief with the Consent Decree.  The School District contends

plaintiffs failed in their primary goal which, according to the School District,

was to revamp B.R.'s program in its entirety.  However, this argument

misses the mark.  The record shows that out of the seventeen points the

plaintiffs sought in their demand for a due process hearing, they obtained

fifteen in the Consent Decree.  The School District also vaguely contends

plaintiffs were already receiving the benefits they obtained in the Consent Decree.  However, as the plaintiffs noted, if this was the case, the School District could have asked for a dismissal at the hearing.

Anticipating the logical rejection of its arguments against a grant of attorneys fees, the School District contends attorneys fees should be reduced.  The School District vaguely contends the plaintiffs protracted the resolution of the controversy, thus, the fees should be reduced.  In support of this argument, the School District states that failing to settle constitutes protraction.  But, as the plaintiffs note, this case was settled, as manifested by the Consent Decree.  The School District's argument for a reduction of attorneys fees based on the plaintiffs' protraction of the case lacks merit.[4]

Without much explanation, clarity or case law, the School District also states attorneys fees should be limited to the hourly rate of $210 instead of the $250 hourly rate the plaintiffs' attorneys seek.  This rate was established one year ago by this district in *J.S. by D.S. v. Crown Point Central Sch. Dist.,* 2007 WL 475418 (N.D.N.Y. 2007).  The court, however,

---

[4]The court rejects the School District's argument that it is entitled to costs pursuant to Federal Rule of Civil Procedure 68 because plaintiffs refused to settle this matter in a manner which the School District considers appropriate.  *See* School District's brief at 24.  In this case, plaintiffs, upon the conclusion of the administrative proceedings, were entitled to file a motion for attorneys fees pursuant to the IDEA.

declines to follow that case for purposes of setting a reasonable rate in this

case and, instead, will follow the most recent case of *Luessenhop v.*

*Clinton County N.Y.,* 558 F.Supp.2d 247 (N.D.N.Y. 2008). In *Luessenhop,*

Magistrate Judge Treece, in a very thorough analysis concerning rates for

attorneys fees in this geographical area[5] for these types of cases,

observed:

> [B]ased upon the rates currently set by the Court, the billing
> rates of civil rights litigators in this geographical district, and our
> experiences with the hourly rate a reasonable, paying client is
> willing to pay, and being further mindful of the relevant factors
> and that the rate should be sufficient to attract competent
> counsel without generating a windfall, we find the reasonable
> hourly rate to be $235.

*Luessenhop,* 558 F.Supp.2d at 266-67. In arriving at this reasonable

hourly rate, this court, as in *Luessenhop,* adheres to the directives of the

Second Circuit and takes into consideration several factors which include:

(1) the complexity and difficulty of the case, (2) the available expertise and

capacity of the client's other counsel, (3) the resources required to

prosecute the case effectively, (4) the timing demands of the case, and (5)

whether an attorney might have an interest in achieving the ends of the

---

[5]In the Second Circuit, it is presumed "that a reasonable, paying client would in most cases hire counsel whose rates are consistent with those charged locally." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 191 (2d Cir. 2008).

litigation.  *Arbor Hill,* 522 F.3d at 184.

In addition, the court considers factors like: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the level of skill required to perform the legal service properly, (4) the preclusion of employment by the attorney due to acceptance of the case, (5) the attorney's customary hourly rate, (6) whether the fee is fixed or contingent, (7) the time limitations imposed by the client or circumstances, (8) the amount involved in the case and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Id.* at 186 n. 3 (citation omitted).

In exercising its considerable discretion and considering the relevant factors mentioned above, and keeping in mind that plaintiffs' team of counsel includes a very experienced attorney in the field, plus the fact that the case demanded out of town travel, and the attendance and preparation for certain administrative proceedings, the complexity of IDEA cases as well as the fact that *reasonable paying clients wish to spend the minimum necessary to litigate the case effectively and could have the opportunity to negotiate the fees with their attorneys, Id.* at 184 (emphasis added), the

court, as in *Luessenhop,* finds that an hourly rate of $235 is reasonable in this case.

Multiplying the hourly rate of $235 by the number of hours reasonably expended by the two attorneys in this case (70.6 hours as indicated by plaintiffs' attorneys in their Exhibit D),[6] and not being able to discern that this number of hours is excessive despite the School Districts' vague assertions of unreasonableness due to the plaintiffs' counsels' request of B.R.'s records, and keeping in mind the Second Circuit's caution that "attorney fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees," *New York State Assoc. for Retarded Children v. Carey,* 711 F.2d 1136, 1139 (2d Cir. 1983), results in a total fee recovery of $18,874.00[7]

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for an award of attorneys' fees (Dkt.

_____

[6]Attorney Cuddy billed 51 hours and attorney Sterne billed 19.6 hours.  *See* Plaintiffs' Ex. D.

[7]This amount includes paralegal fees of $3,288 (41.1 hours at $80.00) and other expenses totaling $870.00 for mileage, overnight fees, filing fees, and also takes into consideration the reduction of $1,875 for travel hours that plaintiffs' attorneys include in their Ex. D at p. 7.

No. 15) is **GRANTED** in the amount of $18,874.00 and defendant's cross-

motion for summary judgment (Dtk No. 16) is **DENIED**; and it is further

ORDERED that the Clerk provide copies of this Decision and Order

to the parties.

**IT IS SO ORDERED.**

Albany, New York
Dated: March 10, 2009

United States District Court Judge